NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REFUNDO, LLC, | Civil Action No.: 13-643 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| DRAKE ENTERPRISES, LTD & PETZ ENTERPRISES, INC., | |
| Defendants. | |

**LINARES,** District Judge.

This matter comes before the Court by way of two motions: (1) Defendant Drake Enterprises, Ltd. ("Drake")'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and (2) Defendant Petz Enterprises, Inc. ("Petz")'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Court has considered the submissions made in support of and in opposition to Defendants' motions and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motions are **denied**.

I.   BACKGROUND

Plaintiff Refundo, LLC ("Refundo") is a company that provides a software program (the "Refund Platform") to individual tax preparers, such as accountants. (*See* First Amended Complaint ("FAC") ¶ 10.) These tax preparers use the Refund Platform to open individual bank accounts at Four Oaks Bank and Trust Company ("Four Oaks Bank") on behalf of their clients so that the Internal Revenue Service ("IRS") could deposit tax refunds directly into these individual accounts. (*Id.* ¶¶ 10, 13-14.)

1

Drake and Petz are entities that are authorized to e-file tax returns with the IRS. (*Id.* ¶ 19.) According to Refundo, tax preparers are not, themselves, generally authorized to e-file directly with the IRS; therefore, they must use such authorized entities as Drake and Petz. (*See id.* ¶¶ 16-17.) Tax preparers do this by completing clients' income tax returns using Drake or Petz's respective tax preparation software, and then sending the completed tax return to either Drake or Petz. (*See id.* ¶ 20.) Drake and Petz then process the completed tax returns and transmit them to the IRS. (*See id.*)

Refundo alleges that as of January 29, 2013, Drake began refusing to e-file with the IRS any tax return in which the tax preparer had used the Refund Platform to designate Four Oaks Bank as the financial institution into which the IRS should deposit a tax return. (*Id.* ¶ 30.) Refundo alleges that Drake has falsely been informing tax preparers that accounts opened at Four Oaks Bank using the Refund Platform are "under suspicion," "unauthorized," and "unapproved." (*See id.* ¶¶ 31-32, 35.) Drake has allegedly "further advised Refundo's customers that if they want to use the Drake Tax Preparation Program they [are] required to use one of Drake's banking partners, one of which is a Drake subsidiary." (*Id.* ¶ 34.)

"On February 1, 2013, Petz [allegedly] announced that it was going to follow Drake's lead, and it too began rejecting and refusing to transmit to the IRS for e-filing any individual tax return." (*Id.* ¶ 36.) According to Refundo, "Petz has been informing Refundo's customers . . . that Refundo is using an unapproved bank," (*see id.* ¶ 38), and that "in order for Petz to agree to e-file the return with the IRS, the Tax Preparers would be required to use one of its 'partnering banks.'" (*Id.* ¶ 39.)

On February 4, 2013, Refundo filed the FAC asserting the following causes of action: (1) tortious interference with economic advantage; (2) tortious interference with prospective

2

economic advantage; and (3) making false descriptions and/or misleading misrepresentations in violation of the Lanham Act, 15 U.S.C. § 1125.  On that same day, Refundo filed an application for an order to show cause seeking to preliminarily enjoin Drake and Petz from, among other things, rejecting any tax returns submitted to them for e-filing using the Refund Platform.[1]  Although this Court granted Refundo's application for an order to show cause, it ultimately denied its application for a preliminary injunction without addressing the merits of the dispute.

Drake and Petz's respective motions to dismiss followed on March 13 and March 22, 2013, respectively.

## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Thus, a complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

---

[1] Refundo subsequently withdrew its application for a preliminary injunction with respect to Petz as a result of a consent agreement into which these parties entered, and this Court approved, on February 13, 2013.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Young v. Speziale*, No. 07-3129, 2009 U.S. Dist. LEXIS 105236, *6-7 (D.N.J. Nov. 10, 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

With this legal framework in mind, the Court will now proceed to address the extent to which the allegations in support of Refundo's asserted claims are well pled.

### A. Count 3 – Lanham Act Claim

Section 43(a) of the Lanham Act provides as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact which -
>
> (A) is likely to cause confusion . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

To state a claim under the Lanham Act, a plaintiff must properly allege: "(1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *See Bracco Diagnostics,*

4

*Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 454 (D.N.J. 2009) (quoting *Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000)).

A threshold question that courts must address in determining whether an alleged false statement is actionable under the Lanham Act is whether such a statement constitutes "commercial advertising or promotion." *See, e.g., Synygy, Inc. v. Scott-Levin*, 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999) (quoting 15 U.S.C. § 1125(a)(1)(B)). "The Lanham Act does not define 'advertising' or 'promotion.' However, courts have held that commercial advertising or promotion consists of four elements: (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry." *Bracco*, 627 F. Supp. 2d at 456 (quoting *Eli Lilly & Co. v. Roussel Co.*, 23 F. Supp. 2d 460, 480 (D.N.J. 1998) (Greenaway, J.)).

Drake and Petz argue that the Lanham Act claim fails because Refundo has failed to allege that Drake and Petz made any false statement that amounts to "commercial advertising or promotion." (Drake Br. at 4; Petz Br. at 6.) Further, Drake argues that Refundo "does not allege necessary facts to show that any alleged deception is material in that it is likely to influence purchasing decisions." (Drake Br. at 10.) The Court will address each of these arguments in turn.[2]

---

[2] Petz also argues that the FAC should be dismissed because Refundo has failed to join the IRS as a necessary party, as required under Fed. R. Civ. P. 19. (*See* Petz Br. at 9-10.) According to Petz, the IRS is a necessary party because an adjudication of this case requires interpretation of complex IRS regulations. Fed. R. Civ. P. 19, in relevant part, provides that a party must be joined if either "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest in the subject of the action." Fed. R. Civ. P. 19(a)(1)(A)-(B). The IRS has not claimed an interest in this litigation, and Petz has failed to cite any authority suggesting that the IRS is a necessary party in any action requiring interpretation of IRS regulations or publications. Accordingly, Petz's argument that the IRS is a necessary party to this action is without merit. *See, e.g., YSM Realty, Inc. v. Grossbard*, No. 10-5987, 2011 U.S. Dist. LEXIS 17830, at *4 (D.N.J. Feb. 23, 2011) (Linares, J.) (observing that unless an absent party claims an interest in the litigation, "the Court need only examine whether complete relief can be accorded among the existing parties").

      a.      <u>Whether Refundo has Alleged that Drake and Petz's Alleged Statements Amount to "Commercial Advertising or Promotion"</u>

To support their assertion that Refundo has failed to allege that Drake and Petz made false statements constituting "commercial advertising or promotion," Drake and Petz both argue: (1) that the FAC is devoid of facts supporting the plausible inference that their alleged statements amount to commercial speech and (2) that neither Drake nor Petz's alleged statements were disseminated to Refundo's purchasing public. Additionally, Drake argues that the FAC's failure to allege that Drake made statements to influence purchasers to buy Drake's goods is fatal to Refundo's Lanham Act claim. Finally, Petz argues that the FAC fails to allege that it and Refundo are in commercial competition. The Court will now turn to the merits of each of these arguments.

      1.      <u>Whether Drake and Petz's Alleged Statements Amount to Commercial Speech</u>

Although the U.S. Supreme Court has "noted that it has often described the core notion of commercial speech as speech which does no more than propose a commercial transaction, it [has also] noted that it has . . . identified a somewhat larger category of commercial speech – that is, expression related solely to the economic interests of the speaker and its audience." *Bracco*, 627 F. Supp. 2d at 454 (quoting *Gordon & Breach Science Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1537 (S.D.N.Y. 1994) (summarizing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993))) (citations and quotations omitted).

Defendants maintain that Refundo's Lanham Act claim fails because Refundo has not alleged that either Defendant's alleged statements proposed a commercial transaction. (Drake Br. at 6; Petz Br. at 6-7.) This argument presumes that commercial speech is limited only to that which proposes a commercial transaction. This Court declines to adopt such a narrow definition

of commercial speech.

Instead, for the purpose of deciding the instant motions, this Court will adopt the U.S. "Supreme Court's broadest definition for commercial speech," that is, "an 'expression related solely to the economic interest of the speaker and its audience.'"  *See Bracco*, 627 F. Supp. 2d at 457 (quoting *Discovery Network*, 507 U.S. at 422).  Applying this definition to the alleged statements of Drake and Petz compels this Court to conclude that Refundo has adequately pled commercial speech.

Indeed, the FAC alleges that in advising Refundo's customers that Refundo used a bank that was "under suspicion," "unapproved," and "unauthorized," Drake's representatives stated that if "[tax preparers] wanted to use the Drake Tax Preparation Program they were required to use one of Drake's banking partners, one of which is a Drake subsidiary." (FAC ¶ 34.)  The FAC further alleges that when a Drake-approved bank is used, "higher fees" are charged, "a substantial portion of which goes to Drake."  (*Id.* ¶ 43.)

The FAC also alleges that in advising Refundo's customers "that Refundo [was] using an unauthorized bank," (FAC ¶ 38), Petz's representatives told Refundo's customers that "in order for Petz to agree to e-file . . . [tax] return[s] with the IRS, that Tax Preparers would be required to use one of its partnering banks."  (FAC ¶ 39.)

This Court holds that these allegations are sufficient to support the plausible inference that Drake and Petz's statements related solely to the economic interest of Drake and Petz on the one hand, and Refundo's customers on the other.  *See Discovery Network*, 507 U.S. at 422; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556*.*

       2.    <u>Whether the FAC Alleges that Drake and Petz's Alleged Statements Were Disseminated to Refundo's Purchasing Public</u>

Drake and Petz offer two different reasons as to why the FAC fails to allege that they

7

made statements to members of Refundo's purchasing public.

According to Drake, the tax preparers to whom it allegedly made false statements about the Refund Platform "cannot be considered Refundo's purchasing public because these tax preparers do not purchase anything from Refundo." (Drake Br. at 7.) Because "Drake's statements are alleged to have been made only to tax preparers, not tax payers," Drake argues that the FAC fails to allege that it made any statement to members of Refundo's purchasing public. (*Id.* at 7.)

Drake's argument lacks merit because the FAC identifies "Refundo's customers" as "authorized tax preparers, such as accountants, who assist individual taxpayers in preparing and filing income tax returns with the IRS using the IRS e-filing system." (FAC ¶ 10.) Additionally, the FAC specifically alleges that Refundo "has a contract with each" tax preparer covering the use of the Refund Platform. (*Id.* ¶ 11.) Accordingly, this Court holds that the FAC alleges sufficient facts to raise the plausible inference that tax preparers to whom Drake made its alleged statements are members of Refundo's purchasing public.

Unlike Drake, Petz does not take issue with the fact that tax preparers are members of Refundo's purchasing public. Rather, Petz maintains that "[t]he FAC fails to establish that the statements allegedly made by Petz were disseminated sufficiently . . . to the relevant purchasing public." (Petz Br. at 8.) Petz's argument raises a question of fact that would be inappropriate to decide on a motion to dismiss. *See, e.g., P&G v. Haugen*, 506 F. Supp. 2d 883, 887 (D. Utah 2007) (observing that whether statement was "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry" raised an issue of fact) (quoting *P&G v. Haugen*, 222 F.3d 1262, 1276 n.9 (10th Cir. 2000)). Accordingly, the Court declines to hold that the allegations regarding the extent to which Petz's alleged statements

were sufficiently disseminated are inadequate as a matter of law.

      3.    <u>Whether the FAC alleges that Drake Made Statements to Influence Purchasers to Buy Drake Goods or Services</u>

Drake maintains that "[a]t the time that [its] statements were allegedly made, the tax preparers had already purchased and were actively using Drake's software." (Drake Br. at 7.) Thus, according to Drake, it "had no need to influence tax preparers to purchase the Drake product they were already using." (*Id.*)

Drake's argument ignores that Refundo has alleged that in making false statements to its customers and refusing to e-file their tax returns, Drake sought to influence Refundo's customers to use, for an additional fee, an optional feature in Drake's software allowing for the creation of a Drake-approved bank product into which tax refunds could be deposited. (*See* FAC ¶¶ 34-35, 43.) Refundo has also alleged that "[a]s a result of Drake's false statements [about the Refund Platform], a customer could reasonably be led to believe . . . that the Refund Platform was inferior to that of Drake's own banking products." (FAC ¶ 35.) These allegations suffice to raise the plausible inference that Drake's allegedly false statements were made to influence customers to use its services.

      4.    <u>Whether the FAC alleges that Petz and Refundo are in Commercial Competition</u>

Petz argues that "[t]he FAC is devoid of any non-conclusory allegations that Petz sells a product that competes with Refundo's product." (Petz Br. at 7.) Specifically, Petz claims that it does not directly compete with Refundo because it sells tax preparation software, whereas Refundo sells software "that makes it easier for authorized tax preparers to open bank accounts for their clients in order for their clients to receive direct deposits of their tax refunds." (*Id.*, citing FAC ¶ 9.)

Petz's argument is unavailing. The FAC alleges that Petz imposes a fee of $15.95 each

time one of Refundo's Tax Preparers uses a tax refund banking product that is not from one of its "partnering banks." (*See* FAC ¶¶ 39, 44.) This allegation supports the plausible inference that Petz seeks to incentivize the use of its bank partners over other financial institutions, and thus competes with Refundo in offering tax refund products. Drawing all reasonable inferences in favor of Refundo compels this Court to conclude that the FAC adequately alleges that Petz and Refundo are in commercial competition.

      b.    <u>Whether Refundo has Alleged Necessary Facts to Support the Plausible Inference that Drake's Statements were Material in Influencing Purchasing Decisions</u>

Drake argues that Refundo has failed to allege the third of the required elements of a Lanham Act claim, that is, "that the deception is material in that it is likely to influence purchasing decisions." (*See* Drake Br. at 10, citing *Bracco Diagnostics, Inc*, 627 F. Supp. 2d at 454.) Specifically, Drake maintains that its "statements to the tax preparers could not have influenced the decisions of Refundo's purchasers" because "tax preparers do not purchase any product from Refundo." (Drake Br. at 10.) As discussed above, the tax preparers to whom Drake allegedly made false statements are identified as among Refundo's customers in the FAC. (FAC ¶¶ 31-32.) These tax preparers use Refundo's software to open a Four Oaks account on behalf of their clients and enter into contracts with Refundo. (FAC ¶ 14.)

Based on the allegations in the FAC, it would be inappropriate for this Court to hold, as a matter of law, that Drake's statements could not have influenced the decisions of Refundo's purchasers. *See Bracco*, 627 F. Supp. 2d at 454.

      B.    <u>Counts 1 and 2 – Tortious Interference Claims</u>

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must allege the following elements: "(1) a reasonable expectation of economic advantage to the plaintiff; (2) an interference done intentionally and with 'malice'; (3)

a causal connection between the interference and the loss of prospective gain; and (4) actual damages." *See Speth v. Goode*, No. 95-0264, 2012 U.S. Dist. LEXIS 112040, at *15-16 (D.N.J. Aug. 9, 2012) (citations omitted).  A valid claim for tortious interference with economic advantage requires a plaintiff to allege those same four elements, as well as "the defendant's knowledge" of a reasonable expectation of economic advantage. *See Metromedia Energy, Inc. v. Griffin*, No. 10-1692, 2011 U.S. Dist. LEXIS 104177, at *7 (D.N.J. Sept. 13, 2011).

Here, both Drake and Petz argue that the tortious interference claims must be dismissed as a result of Refundo's failure to allege facts showing that either Defendant acted with malice. (*See* Drake Br. at 11-12; Petz Br. at 4-5.)  New Jersey courts have defined "malice" as "the intentional doing of a wrongful act without justification or excuse."  *See, e.g., Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 756 (1989).  As this Court has previously observed, a plaintiff need not allege that a defendant acted with "ill will" to adequately plead the malice element of a tortious interference claim.  *See Metro Foods, Inc. v. Kelsch*, No. 11-3306, 2012 U.S. Dist. LEXIS 19379, at *13 (D.N.J. Feb. 14, 2012) (Linares, J.) (citation omitted).

The crux of Refundo's argument is that has adequately pled "malice" by alleging that Drake and Petz have refused to e-file the tax returns of taxpayers who choose to create a direct deposit using the Refund Platform in violation of IRS Publication 1345 which states, "Providers must accept any Direct Deposit election to any eligible financial institution designated by the taxpayer."

Generally, legal conclusions asserted in a complaint are not entitled to any credit when considering a motion to dismiss.  *See, e.g., Iqbal*, 556 U.S. at 678.  In this case, however, determining whether the Refundo Platform creates a "direct deposit," as that term is used in IRS Publication 1345, requires the factual record to be developed further.  *Accord Metro Foods*, 2012

U.S. Dist. LEXIS 19379, at *13 (observing that the malice "standard is flexible and should be determined on an individualized basis in the context of the *facts* presented") (emphasis added). This is particularly so since the Court is unaware of, and neither party has cited to any case law addressing the applicability of IRS Publication 1345 to the types of accounts created by the Refund Platform.[3]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are denied. An appropriate Order follows this Opinion.

Date: April 22, 2013

/s/ Jose L. Linares_____
JOSE L. LINARES
United States District Judge

---

[3] Although Defendants have not raised the issue in moving to dismiss the FAC, when opposing Refundo's application for a preliminary injunction, Drake argued that the Refund Platform does not create a "Direct Deposit," which Drake maintained is a type of account under the sole and exclusive control of the taxpayer. *See Refundo, LLC v. Drake Enters.*, No. 13-63, 2013 U.S. Dist. LEXIS 23638, at *5 n.3 (D.N.J. Feb. 21, 2013). Rather, according to Drake, the Refund Platform creates a "Bank Product," which is a type of account into which funds are deposited and then disbursed to third parties for the purpose of paying tax preparation fees. *Id.* Drake specifically argued that it was justified in refusing to e-file tax returns using the Refund Platform because the Bank Products it creates are governed not by IRS Publication 1345, but by Internal Revenue Code § 7216, which requires taxpayers to authorize disclosure of tax-related information to third-parties. *Id.* It is apparent to this Court that determining whether the Refund Platform creates a Direct Deposit or a Bank Product raises a question of fact that is inappropriate to resolve on a motion to dismiss.